All right, this next case is Kahn v. BDO Seidman. For the appellant is Mr. Derry. And for the appellee, we have a whole bunch of people. Kirk Brett, Teresa Trescoma, and Kane Nord Hunt. You may proceed for the appellant. Thank you, may it please the court. This is a related appeal to the BDO appeal that we were here on about a year ago, where this court reversed the trial court's ruling and sent the BDO case back to the trial court. At issue here today is whether or not the statute of limitations is run against Kahn's claim, against Deutsche Bank, and against Grant Thornton. The law is pretty clear, it's actually very clear on what the statute of limitations is, and it's not disputed. That is, you have to have a cause of action approved, and then the Kahn's have got to know of the injury, and that it was caused by Deutsche Bank and Grant Thornton. And in Illinois, there are three cases that are on point in a situation where a taxpayer has been in an audit and has been assessed tax liability, penalties, and interest. And those three cases are right on point. What those three cases are are Federated, Gould, and Braunstein. Federated was a 2010 case that just recently came out, and what Federated says is that if a taxpayer is in an audit, the injury is suffered at the notice of deficiency stage. No sooner than that, it's a bright line test. So in Kahn's case, he was issued a notice of deficiency from the IRS on August of 2008. So according to Federated, that is the time that Mr. Kahn was injured. Can't be any time sooner. Federated also addressed when Kahn should have known of the injury and when it was wrongfully caused by Grant Thornton and Deutsche Bank. And in Federated, the court said as well that the Discover rule does not trigger until the notice of deficiency. Again, it is a bright line test. And so with Kahn, under Illinois law, that's directly on point. Mr. Kahn's claims did not begin to run against Grant Thornton and Deutsche Bank until August of 2008, when the IRS issued a notice of deficiency against him. Cannot be any sooner. And the reason why Federated and Gould and Braunstein say that that's the triggering point is because, as Federated and MC Baldwin says, an injury in an audit is a latent injury. You may have the wrongful conduct by Grant Thornton and Deutsche Bank back in 1999 or 2000, but the injury doesn't occur until much later when the IRS issues a notice of deficiency. So it makes absolutely no sense, according to Federated, for the statute of limitations to begin to run any sooner than the notice of deficiency. So we filed our lawsuit on July 2009, which is less than a year after the notice of deficiency. And so under Illinois law, as a matter of law, our case is timely filed because the shortest statute limitations are causes of action are three years. The trial court erred in holding that the injury to the Kahn's occurred with respect to Grant Thornton when the tax returns were done in 2001, and with Deutsche Bank when the Kahn's paid the fees to do the transaction in 1999 through 2001. And Federated is clear, Gould is clear, and Braunstein is clear that paying fees on a transaction in an audit case to a promoter or the tax return being prepared doesn't trigger the statute of limitations. Notice of deficiency does. And in fact, the Gould case that the court said didn't apply is right on point, because in the Gould case, the plaintiff paid fees on the investment for the tax shelter, it was a tax shelter, in 1974, didn't get audited until a notice of deficiency wasn't until 1988, didn't file a suit until about a year later. And the court said in that case that the payment of fees don't trigger the injury, nor the describer rule, because they don't become an element of damage until a notice of deficiency. Likewise, in Federated, in that case, the plaintiff hired audit lawyers and sued the accountant. And the tax return was prepared much sooner than they ever filed a lawsuit. And the court in that case said tax return preparation isn't sufficient. Now, the trial court then went on to say that the describer rule is triggered when, in May 2003, when the cons hired audit counsel. Because at that point in time, the cons audit lawyer should have figured out that Deutsche Bank and Grant Thornton and VDO had committed this major fraud. Now, Federated says hiring audit counsel does not trigger the describer rule. And in fact, in the Federated case, the plaintiff hired audit counsel. Audit counsel met with the IRS lawyers, met with the defendant who they had sued. And both the IRS lawyers and the defendant told the audit counsel that the accounting firm had messed up and the IRS was going to audit. And the Federated court said that is not enough for the describer rule to be triggered. Because even if the audit counsel finds out during the audit that the defendants have been negligent, you don't have an injury until notice of deficiency. And their statute of limitations does not begin to run until all elements of the cause of action are present. So with respect to the statute of limitations, the injury didn't occur until the notice of deficiency in August of 08. The discovery rule was not triggered until August of 08. The cons filed their lawsuit in July of 09. Our shortest statute of limitations is three years. So under clear-cut law in Illinois, the cons' claims are timely filed against Grant Thornton and against Doysha Vane. The court erred in that holding. We've also, the cons also alleged a fraudulent concealment claim. At this stage, at the motion to dismiss under 2615, we have adequately alleged a fraudulent concealment claim. We have alleged that Grant Thornton and Doysha Vane fraudulently concealed information that we would need to know that we had a cause of action. Our complaint is replete with direct representations, omissions. As you will see in our complaint, in this case, Doysha Vane has admitted to the United States government just recently that they were involved in this fraudulent and illegal tax shelter and paid $550 million to the government. Four partners at BDO that were involved in our transaction have all pled guilty to fraud and conspiracy to commit fraud. The head of the BDO tax section has been indicted. Doysha Vane, David Parsons, who's a defendant in our case, has been indicted for fraud and conspiracy to commit fraud. All those factual, all those indictment allegations, we alleged long before those indictments came out in our complaint that those facts existed with respect to Mr. Khan. So we have alleged in our complaint the necessary elements for a fraudulent concealment claim and at this stage of the game, under the motion to dismiss stage, we have sufficiently pled so we should have been dismissed. The court did not, the trial court did not get to the fraudulent concealment claim. So that's our fraudulent concealment issue. With respect to our breach of fiduciary duty claims against Doysha Vane, we don't have those claims against Grant Thornton aren't raised in the appeal. It's just against Doysha Vane. The court ruled that under Illinois law, Mr. Khan has not properly pled the breach of fiduciary duty relationship existed. And the court ruled that the cause did not plead the requisite disparity. And I would urge your honors to look at our complaint because we have alleged in great detail the elements that are required to plead a fiduciary relationship. We have pled that the Khans placed their trust and confidence in Doysha Vane and that the Khans entrusted the handling of the transaction with Doysha Vane and that the Khans were unsophisticated and unknowledgeable about this transaction. We allege that Doysha Vane knew the Khans were unsophisticated and unknowledgeable, that Doysha Vane told the Khans that they were the experts and that the Khans could rely upon them, and that David Pars told Mr. Khan, don't worry about anything. I will handle every aspect of the trades. So we have, at this stage, alleged an adequate fiduciary relationship. So under New York law, which we believe Illinois law applies because the breach of fiduciary duty claim is with respect to the investment strategy as a whole. And Illinois is the place of the injury, the place of the resident, the place where the conduct occurred. And under the breach of fiduciary duty law, the choice of law can be separate apart from the contract. You have to look at whether or not the tort claim depends on the contract, relies on the contract, or whether it can exist separate apart from the contract. And our breach of fiduciary duty claim goes to the investment strategy and not to the confirmation agreements, which only deal with the specific trade that were done on a specific date. So we believe Illinois law applies. But even if you look at New York law, we have pled the requisite relationship under New York law to meet the pleading requirement at a motion to dismiss stage. So then we look at the disclaimers. And what's important on the disclaimer issue is if you look at the two agreements that are involved, you've got the Deutsche Bank account agreement, which was signed in early on November 18, 1999. They do not have disclaimers. And that governs the whole account. Then about three weeks later and then about a year later, Deutsche Bank had our clients enter into confirmation agreements, which deal specifically with the digital option trades on a specific date. Those confirmations are the only document that have the disclaimers. The court held that because there are disclaimers in the confirmation agreement, their mere existence means that the cons have waived their ability to rely on any representations made by Deutsche Bank, whether it's on the investment strategy or with respect to those small little investments that were part of the transaction. And the court was wrong. In Illinois law, you have to look at the scope of the transaction to determine if the disclaimers apply in this case. And on the confirmation agreements that have the disclaimers, the disclaimers relate only to the transaction. And transaction is defined as the execution of the digital option trades or the currency trades on these specific dates. So it doesn't apply to the entire investment strategy. And so to the extent the court would hold that the disclaimers do apply, it only applies to these trades on a specific date and not to the investment strategy as a whole. And as we pointed out in our brief, we don't even allege that Deutsche Bank improperly did the trades. We allege that they sold us a tax shelter that they knew was illegal and abusive. So bottom line, the confirmations do not cover the investment strategy. And so the disclaimers with respect to our breached fiduciary duty claim have not been waived. Under Illinois law, the disclaimers are invalid for a second reason. And that is under Illinois law, in order for disclaimers of reliance to be effective, they have to be explicit, expressed, and specific about what type of representations you are disclaiming. And the transaction, the reliance and the confirmation agreements, they're not specific. They basically say that Deutsche Bank, they say this. Quote, not relying on any communication, written or oral, of Deutsche Bank as investment advice or as a recommendation to enter into the transaction, the transaction being defined as the investments. They do not track the specific representations that we say Deutsche Bank made to us. And under a case we cited, Green versus Beer, the court looked at a tax shelter that is almost exactly like the coin strategy at issue here and held that in that case, the disclaimers were not specific. They were general. And they did not disclaim any reliance on the tax shelter or the legal consequences of the tax shelter. I now have five minutes. I've still got Grant Thornton. The court was going to give me some extra time. I'm not sure how you want me to deal with that. You get 20 minutes to begin, and then we'll see what happens afterwards. I'll turn to Grant Thornton so I can cover the statute of repose issue. Grant Thornton, the statute of repose has a two-year exception that triggers when a plaintiff has had an assessment made against him on income tax. And the two-year assessment, the two-year time to sue the tax preparer kicks in when the plaintiff has had the assessment from the IRS. So you have a five-year statute of repose, but you have a two-year exception, that five-year, that says if you've been assessed, you get two years to sue your tax return preparer within the two years of the assessment. The court erred in holding that the two-year exception doesn't apply. Grant Thornton doesn't even assert that the two-year exception doesn't apply. So there's cases right on point in Illinois that say the two-year exception applies. Grant Thornton argues that the plaintiffs have not pled assessment. And what they do is they say that there's all these IRS definitions and regulations that we haven't alleged it. For the purposes of a pleading at this stage, we have alleged assessment in about seven, eight, nine different ways, including notice of deficiency, notice of adjustment, notice of tax due in 2008. So I don't think there's any dispute about what we've alleged and that we've, under the motion to dismiss standards, we have sufficiently alleged it. Grant Thornton fails to discuss the IRS's own definition of assessment in their website. And the notice of deficiency that's defined in the website of the IRS says a notice of deficiency is a notice of the commissioner's determination that you owe additional tax or other amounts. So it's clear we've alleged that. The Black's Law Dictionary on definition of assessment meets with our pleading. More importantly, the Federated case, which I talked to earlier, recognizes that the notice of deficiency is a final assessment. That is a time when you can bring your lawsuit against the defendant because that is when the damages have occurred and the court is assessed. If you look at what we've alleged in our complaint, we allege we got a notice of deficiency that said, you have been assessed, taxes, penalty, and interest, and they've given us the amount. So Dorset Bank wants you to forget all that, go to these regulations that define what an assessment is, and what's clear is they don't have a case that says that the statute of repose exception meant what they're saying it meant. All it says in the statute of repose exception is that the assessment, once you get an assessment, you get two years to bring it. So Dorset Bank wants the court to assume that the legislature meant these hyper-technical definitions when they wrote this exception, and there's no evidence that they meant that. Finally, to prevail under this special exception of the statute of repose, we have to show that Grant Thornton prepared the CONS tax returns. We've done that. Grant Thornton prepared the thermosphere tax returns, which are the partnership returns, which CONS is a partner of, and they prepared the K-1s that were issued to CONS. So we have shown that Grant Thornton prepared the tax returns. The statute of repose does not make any distinction between whether or not it's a partnership return, or a K-1, or an individual return. So the CONS have pled that. Moreover, if you look at the way the transaction works, the losses from the strategy went to the partnership tax return, which is thermosphere, and then came down into CONS' individual tax return through a K-1. So Grant Thornton prepared both of those, and CONS' losses that he used on his tax return were the losses that were allocated from the thermosphere partnership return that were on the K-1. So when the IRS audited the CONS, they did so based on the losses that Grant Thornton put into the thermosphere return that were then transported by K-1 down to CONS' individual return, and the losses generated on those tax returns of K-1 were the basis of the IRS' assessment. So it's clear under the statute of repose that the CONS have brought their claim timely within the two-year exception because they brought it within two years of when they were assessed by the IRS. Thank you. You'll have additional time on rebuttal. Before I call up the first affidavit argument, I want to bring up the question of judicial notice that's been requested that we take. And is there any objection to that, to the judicial notice of the Deutsche Bank IRS levy? No, Your Honor, and I'm Kirk Brecht of Deutsche Bank. We did put in a response indicating that we had no objection. Right, but there are other parties involved, and I was wondering if anybody else had an objection. If not, judicial notice is taken. All right, Mr. Brecht, you may proceed. Thank you, Your Honor. May it please the Court, I'm Kirk Brecht for Deutsche Bank. And counsel for David Parse, Teresa Trascoma will take the last five minutes of our combined 20-minute presentation. Thank you. So obviously, the issue, the major issue here is the timeliness of this complaint. The actions that are complained of occurred nine or 10 years before the complaint was actually filed. And I think it might make sense to just go back a little bit through the facts of this case, just to make sure that we appropriately step back and look at what really happened or what really is alleged. The allegation and the complaint is a matter when the actions complained of occurred, if in fact this notice is what triggers? Well, yes, Your Honor, because the harm that is alleged in the complaint occurred in 1999 and 2000. And that was one of the things that I wanted to make clear, was that the allegation of the complaint is that the Deutsche Bank defense committed fraud in 1999 and 2000 and sold the plaintiffs here a worthless investment. And what the court found below, and correctly I would submit, is that when that occurred, when that allegedly worthless investment was sold and Deutsche Bank collected fees, that that in and of itself is the harm that gives rise to the claims here. So we're supposed to ignore Federated? For purposes of this case, I would submit yes. I mean, I don't want to push it too far, but Federated comes up in a vastly different context. Federated relates to a different statute, a different set of policy considerations, vastly different facts, and vastly different harm. We have, in Federated, we have an accountant malpractice case with a statute that deals with a two-year limitations period for accountant's liability. That is not what we're dealing with here. In Federated, we have a policy that is clearly articulated in Federated, repeatedly, also by reference to the California case in Feddersen, where the court says that when you get an IRS notice of a proposed audit, one of the first things you do is you pick up the phone and you call your accountant. That is not at all what is going on here. In an accountant's malpractice case, it's not entirely clear whether or not the IRS has made a mistake in analyzing your tax return. And so you go to your accountant, who knows of your financial affairs in their entirety, and you ask your accountant to please try to straighten this out. That is what's going on in Federated. That's the policy there. That is not what's happened here. Here, the harm happened. The relationship with Deutsche Bank was severed in 2000. And as you know from the complaint, there are allegations of additional tax shelters done in 2001 that Deutsche Bank had nothing to do with. But the relationship was over. OK. So again, the harm was inflicted back in 1999 and 2000. Again, the harm in Federated and the type of harm in a malpractice case is different because you don't know if the IRS has made a mistake or if your accountant's made a mistake. And you're trying to get to the bottom of that. If the IRS turns out to be wrong and you've incurred some legal fees and so forth, additional accountant's fees, that's the fault of the IRS. That's not the fault of your professionals. Here, the harm was unquestionably immediate. Allegedly, Deutsche Bank sold the allegedly unsuspecting plaintiff a bill of goods. That harm happened when he paid for them, when he paid for the tax shelter. So that's why I'm hopeful that you'll agree with Judge Ford that the harm happened at that time. And then what we get to is, well, when should these plaintiffs have learned of the injury? It's not whether they actually knew. It's when they should have learned. And that's when we get to the various items, again, in the facts that deal with notice. So first, we have the results of the investment themselves. The plaintiff here has made the allegation that the plaintiff was attempting to engage in a legitimate investment. When the investment was concluded just a few months later and the plaintiff made no money at all, but instead just paid Deutsche Bank fees, perhaps an alarm bell might have gone off saying, hey, what just happened? That didn't turn out quite the way I planned. Then we have these public notices, which in other states would be amply sufficient to give the plaintiff notice. We have news articles that were presented to the courts below relating to those tax shelters, to the public notices from the IRS. And then, of course, we have the audit. And then, of course, we have experienced litigation counsel, tax counsel being hired for the purpose of defending the audit. And at that time, Judge Ford said, you know, enough is enough. These plaintiffs, at that point, should have learned, or should have had enough information to do their diligence to find out that a fraud had been inflicted upon them. So other courts refer to when the storm clouds are formed, as to when the plaintiff should learn of the, or should be on notice that a fraud had been perpetrated. And that's clearly what we have here. OK, so now one other point on federated in the cases on the malpractice claims is if the point here is that there was no claim that accrued at all until the IRS issued a final deficiency notice, then on the facts here, we kind of have a bizarre result. Suppose, and I think that the complaint suggests that the cons didn't really know that a fraud had been perpetrated for some period of time. But suppose they actually knew. Suppose they learned in 2003, for sure, that a fraud had been perpetrated. That they were sold a bill of goods, for sure. And they learned of that in 2003. Is the suggestion that they didn't have a right claim? That they engaged in an investment, they paid money, a fraud had been perpetrated, and they couldn't sue? They'd be thrown out on standing grounds, on rightness grounds? That would be an absurd result, I would submit to you. So again, these malpractice cases, I just don't think, are particularly helpful here. So what's your best case? Well, Your Honor, we have the standard cases. We have Aetna. We have, I mean, this is not such an unusual set of circumstances. The claim accrued when all the elements came into being, or when there was sufficient elements overall to assert a claim. That's Aetna. And then we go into, so I think it's a fairly straightforward analysis, until you get to my job of dealing with the discovery rule, my job of dealing with the concealment argument on behalf of the plaintiffs. And I hope I've dealt with the discovery rule. But on the concealment front, I would say also that there are no allegations of any specific concealment, of any specific act of concealment. The relationship, again, going back to what actually happened, the relationship terminated at the end of 2000. And at that point, all of the other information was available to these plaintiffs. They hired separate counsel. And again, there was sufficient information out there that they could have looked into this. This is not a concealment case. This is either the plaintiff's returning a blind eye, or they actually knew when they're suggesting otherwise. But either way, this is not a concealment case. Now, I should deal with the fiduciary duty and negligent misrepresentation claims in part. What we have here are conclusory allegations of fiduciary duty. The plaintiffs have done the homework as to what the elements are, the base elements are, to assert a fiduciary duty claim. But the facts that are in the complaint, the facts that are undisputed, suggest that they're clearly dictate that there's no fiduciary duty here at all. We have a financial institution in Deutsche Bank with, I think, it's 14,000 employees in the US. This is not an entity that lightly takes on fiduciary duties. And the case law is that a fiduciary duty in this context is something that requires extraordinary circumstances. And here, you don't have extraordinary circumstances. You have a financial transaction that was engaged in. You have a sophisticated, as put by the Minnesota State Court in the BFS case against Deutsche Bank, by the way, a very similar, either the same or the similar type of shelter. The court there said, you have sophisticated, intricate business dealings. This is not a fiduciary duty. And then, of course, you have the specific disclaimer of fiduciary duty. And there's no suggestion that the plaintiffs didn't know the document that they were signing. Now, I think we should contrast this case to, or look at the case in Ransom. I think it's Ransom v. A.B. Dick, to see how a court might otherwise find a fiduciary duty. And if you look at the facts there, you see just how clearly it is that we can't have fiduciary duty here. In Ransom, you had a decades-long relationship, not two years. You had an exclusive distributorship relationship. That's not at all what we have here. There's no exclusivity at all. We have the alleged fiduciary in Ransom sent its officers to help the other, what became the plaintiff, to provide financial services, to act as acting CFO, to find potential buyers. You have this tremendous intermeshing of relationships here. And that is just not at all anything close to what we have here with Deutsche Bank and the Kahns. So again, I think we have no fiduciary duty at all. And that also would take care of the negligent misrepresentation claim, which also requires a heightened relationship, heightened duty between the parties. We also have the non-reliance language in the documents, which a lot of time was spent on that. But again, without the duty, we don't get to the non-reliance. But again, we don't have a plaintiff here who alleges that he didn't know what he was signing. It's not like we took his signature page and attached it to some other document. That's just not what we have. So at bottom, we have old, stale, meritless claims. Judge Ford saw through that, saw through the nature of the claims, and said, these are too old. The Kahns here had a choice. They could take on the IRS, or they could take on Deutsche Bank when they first got their notices of audit. And what they did was they decided to go after the IRS and defend these tax shelters. When the Kahns made that decision and went on a five-year litigation bend against the IRS, they willingly allowed the claims against Deutsche Bank to become stale and we're dealing with the consequences now. That's all I have, unless there are questions from the bench. I don't believe so. Thank you. Mr. Scone. May it please the court, Teresa Trescoma on behalf of David Parse. There are three things I'd like to focus on on behalf of Mr. Parse today. The first is what Mr. Brett touched on in closing, which is what's really going on here, what really happened here, which is that the Kahns invested in this tax shelter, participated in several tax shelters. And in 2002, when BDO Seidman was served with summonses seeking the names of all of its clients who participated in those tax shelters, the Kahns and others were notified that their names were being sought. I believe there were John Doe and Jane Roe intervenors, as reflected in one of the exhibits below the district court's decision, which was Exhibit 1 to Michael Wanzer's Declaration on Reply, a document that Judge Ford below relied on in concluding that the writing was on the wall, at least as early as 2003. I believe it was on the wall a lot sooner than that, a lot earlier than the notice of deficiency, which is not what I would argue triggered the notice to the Kahns. The Kahns were notified that the IRS was taking the position that the very tax shelters they had entered into were abusive and illegal. And at that point, I believe they retained highly reputable tax counsel who would have alerted them to the fact not only that the IRS was taking this position, but that that position was based on Notice 1999-59, Notice 2000-44. Those are the very notices that plaintiff's complaint alleges put us, my client David Parse, on notice that these were illegal tax shelters. So, and Mr. Deary said that the basic crux of their allegation is that they knew, that we knew, that Mr. Parse knew, that he was selling an illegal and abusive tax shelter to the Kahns in 1999 and in 2000. And the question is, at what point were the Kahns put on notice that that had happened? It is not in 2008 when, after five years of battling with the IRS, the IRS finally wins. It is at least in 2002 when BDO Seidman informs its clients that the IRS is taking that position. At that point, the Kahns know not only did they lose hundreds of thousands of dollars in their investments with Deutsche Bank, but their names are being sought and audits are inevitable. And in fact, and I think that what the trial court below did was give every benefit of the doubt to the Kahns by concluding that in May of 2003, when the Kahns hired counsel to deal with their notice of deficiency and deal with their audits, that's just, that's it. They were clearly on notice of the facts supporting a potential claim not only against David Parse, but against his former employer, Deutsche Bank. And it can't, federated is inapplicable to this case and proves, it's inapplicable not only because it relates to a special bright line rule in accounting cases where the allegation is negligence in the preparation of a tax return. That's not the claim against David Parse. It's not the claim against Deutsche Bank. The claim against David Parse and the claim against Deutsche Bank is, as Mr. Brett said, that Deutsche Bank sold the Kahns bill of goods. They engaged in affirmative fraud. They lied. These are all the allegations. And at the point that the Kahns have reason to know that whatever alleged representations were made to them about the legality of these shelters, that those were probably not true, the statute of limitations unquestionably started running at that point. And to hold otherwise would, and there are other cases floating out there, these late comers, where the taxpayers have spent years, years going up and down the tax courts, the district courts, the appellate courts, trying to obtain the favorable tax treatment that they sought. They simply can't have it both ways. They can't argue on the one hand to the IRS for five years. This was a legitimate investment. It's a legitimate tax position I am taking. I should be permitted to keep my tax losses. And then when they fail on that front, come back and argue that they should be allowed to pursue claims against Deutsche Bank and David Parse because it wasn't true. Is there an argument to be made that they didn't know until the IRS ruled and until they lost? Well, their claim is that we sold them a tax shelter, that we knew the IRS would conclude was illegal and abusive. At the time the IRS gives them notice, you have engaged, we believe you have engaged in an illegal and abusive tax shelter, that's the line in the sand. It's not whether they win or lose. And there were. Well, I don't know that that's really correct. If the cons were sold on these strategies because the BDO people and the Deutsche Bank people did a really good job of selling. Well, that's an allegation. OK. OK, that's for a jury to decide. But if that's the case, and then the IRS says, oh no, these are no good and you're going to have to pay us money for the taxes and penalties, and the cons are still believers in this thing, again, that's a question of fact for a jury to decide. But according to your argument, you say it's unreasonable for them to think anything else other than they were dealing with crooks by the time they first got notice of an audit. I mean, it could go the other way, couldn't it? It's not that they were on notice. If the complaint is replete with allegations that the reason, supposedly, that my client knew that these tax shelters wouldn't work and wouldn't fly with the IRS were these IRS notices. It's not that the allegation is not that David Parse didn't know at the time that these wouldn't work. The allegation is to the contrary, that he did know and that he misrepresented that fact to them. And the question is, at what point should they know? And it's the same information that gave notice to my client, which are these very early notices, that would have put him, or at the very least, his very reputable tax counsel. I mean, it could be that these things were fine, right? But in that case, there's no basis to conclude that David Parse would have known that they weren't fine. The allegations fly in the face of arguing that they couldn't know until the final notice of deficiency. Because the allegations that these are the notices and we knew about these notices, so we knew that this was a fraudulent tax shelter, they are aware of that as well, when they hired tax counsel in May of 2003, who represented them in the effort to keep their names from going to the IRS. They sought to conceal their names from the IRS for a very long time. And it's, it's, thank you. OK. Thank you, counsel. Ms. Hunt? Good morning, may it please the court, my name is Kay Nord Hunt and I represent Grant Thornton. Grant Thornton is before the court requesting that the court affirm the dismissal of this action against it as time barred. Throughout Appellant's complaint, Appellant's repeatedly alleged that defendants, in which they include Grant Thornton, were part of the COIN strategy, this illegal fraudulent tax investment scheme, which occurred in the time period of September 2000 through April 2001. The complaint alleges the same injuries and the same damages against all defendants. So even though the bank and Grant Thornton are governed by different statute of limitations, the court agreed that for purposes of determining the accrual of the statute of limitations, the analysis is the same. Contrary to Appellant's arguments made when faced with the motion to dismiss for statute of limitations, their own complaint sends out multiple injuries and resulting damages, some of which accrued before the IRS issued its notice of deficiency in 2008 and is not ultimately dependent on the determination of liability. According to Appellant's complaint, the COIN strategy was fraudulent and they were injured when the investment was made. They assert that when they entered into the COIN strategy with the expectation of gaining a benefit and paid substantial fees in connection with that benefit, according to their complaint, Allegation 122, there was no possibility at the time they entered into it that they would obtain a profit in excess of fees. They allege also that the benefits were worthless when the IRS issued public notice 1999, 59, and 2044, proclaiming such losses would be invalid for tax purposes as of December 1999 and August 2000. As another example, Appellants also claim, as injury and damage, the loss of a remedy in late 2001, 2002, being not able to participate in the IRS tax amnesty program, and that's at paragraph 150 and 151 of the complaint. So while it's true that a tax deficiency assessment may constitute injury damage depending on the facts of the case, injury and damage can certainly occur prior to that time, and that's what Appellants have asserted in their complaint. As the California courts have recognized after the Feddersen case, which the court looked to and federated, there really isn't a one-size-fits-all when it comes to when you're going outside of your just straight old negligent tax preparation case. Here, that's what the trial judge recognized. What we have here is, according to Appellants' complaint, a complaint that there was this broad fraudulent scheme that they knew was fraudulent at the time they were selling the investment, and therefore, the injury occurred according to their own complaint back at the time of the investment. And here, we have by 2003, we have multiple IRS public notices, we have the articles in the press, we have lawsuits being brought, and it's clear the clock is running, and they did not bring the case within two years, and therefore, it's time barred under the statute of limitations that governs with regard to accountants. I want to just briefly address the subdivision B reposed portion of the statute. Since this case falls within subdivision A, there was injury and there was a trigger well within the reposed period, and they didn't bring the cause of action, it's gone. This case is gone. So the reposed period actually doesn't even matter for the analysis of this case. It doesn't make sense where here you have the injury and you have the trigger to somehow then turn to the reposed period, which is meant to be a cutoff when you aren't aware of the injury and the trigger. So really, you really don't need to look to the reposed period at all. If the court were to somehow conclude that it doesn't agree with the injury and trigger analysis, then I guess you do look to the reposed period, and if you look at the reposed period, it would cut off at 2006. This lawsuit was not brought until 2009. Now, with regard to the exception, we raised in our motion to dismiss that the exception doesn't apply. There's been no assessment. An assessment is the final determination. It's like it's where you have a judgment, it's a lien. What they have alleged in their complaint, although they'll throw around the word assess, if you look at paragraph 208, they're talking about a notice of deficiency. A notice of deficiency is not an assessment. It's a preliminary determination. It is not the final determination. And what happened when we argued this before the trial court in specific response to our argument, and if you look at page 21 of the transcript, they acknowledged there hasn't been this finalization. They said, well, then maybe, you know, we should dismiss this case as without prejudice. But they acknowledged that you aren't in an assessment situation, so therefore, the exception doesn't apply. They have the burden of proof on the exception to the statute of repose. They did not bring anything forward on that, and on that grounds also, there would be no basis to reverse the district court. Finally, with regard to whose tax return we're talking about, we're talking about Thermosphere. There's nothing in the record with regard to any assessment against Thermosphere, which is the only tax return that Grant Thornton prepared. And so we ask that this court on the record, and specifically, we ask the court to go back and look at the how it's alleged in terms of the claim that there's this massive fraud at the time, that the injury occurred at that time. Running throughout all the complaint is the idea that there were these excessive fees charged for this investment. That is what they are claiming as damage. That occurs in 2001. It occurs at the time the investment's made. And so therefore, we're not looking at anything like a federated situation or any other of the cases that have come before the court involving accountants, because we're not talking about the straight, you know, this is a negligent preparation of a tax return that we don't want to put the accountant and the client at odds while this is going on. Here, they're alleging that the accountant was in bed with the rest of the participants in this fraudulent scheme, and so we don't even have the policy reasons that would have applied and federated to the facts of this case. So we ask that this court affirm the dismissal of this case. Thank you. Thank you, Carol. Mr. Curry? Thank you. With respect to Deutsche Bank, Deutsche Bank ignored the Bronstein case, which says that a cause of action under this circumstance is premature until there's a final determination of the tax liability. They ignore federated, which says the case is premature until you have a notice of deficiency, and that's the newest case. They ignore Gould, so they ignore the three Illinois cases that are right on point. They don't have one case to dispute those three cases. They don't have one case that says- I thought you said Aetna did. Aetna doesn't dispute any of those cases. Aetna is not a case that involves an audit situation where the court's trying to determine if there's a statute limit, when the statute of limitations runs. Aetna actually supports the cons, because Aetna says, when you're looking at the statute of limitations for a negligence claim, all the elements have to be present. You have the negligent act. You have the breach, cause, damages. What Aetna said was, just because you have a negligent act doesn't mean the statute of limitations runs, because you have to have injury. And if you were to take the statute of limitations for running from the negligent act, then claims would be barred before there was ever an injury. That's what Aetna says, and it actually supports the con case. So that case has nothing to do with the statute of limitations in an audit case, but in fact, it does support con's position. Deutsche Bank does not bring you a case that says that the discovery rule starts when you only have notice of the wrongful conduct. They don't bring you a case that says the discovery rule can start when the cons knew all this bad conduct was going on. The fact of the matter is, there are three cases on point, and if you took everything that Deutsche Bank said the cons knew, that it was fraudulent back in 2000, that there were these IRS notices that went out and hired audit counsel, if you took all those and agreed to them, under Illinois law, it's still not enough to trigger the statute of limitations, because Federated has said you have to have injury for the discovery rule to kick in, and at the time when all this wrongful conduct was going on, there was no injury, because the injury did not occur until a notice of deficiency. Federated makes the point, that the plaintiff and Federated hired audit lawyers. The audit lawyers went out and met with the IRS. They met with the defendant's lawyers. And what Federated said was, not enough. Even if they learned during that investigation that the defendant was wrong, the statute of limitations did not begin to run, because there was not an injury. With respect to Grant Thornton, it is clear the statute of repose, exception for two years, applies. It is clear that we've alleged an assessment. What they're claiming is an assessment that flies in the face of Federated, it flies in the face of Black's Law Dictionary on Assessment, it flies in the face of the IRS website. And so what they're basically saying is, is that you need to assume that the legislature meant all this technical stuff when they said, when a taxpayer is assessed, taxes. That's all the statute says. We've properly pled it. We've also properly pled that Thermosphere is a plaintiff, tax returns are prepared for Thermosphere, the K-1, all the arguments I went through on that, I don't need to repeat. Thank you. Thank you, Kevin.